UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Huston Bigelow and Mary Bigelow<br>969 County Home Road<br>Blanch, NC 27212, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. _____ |
| Washington Hospital Center, Inc.<br>d/b/a the Washington Hospital Center<br>110 Irving Street, N.W.<br>Washington D.C.  20010, | ) ) ) ) ) ) | |
| And | ) ) ) | |
| Medstar Health<br>d/b/a the Washington Hospital<br>Center<br>5565 Sterrett Place<br>Columbia, Maryland<br>21044, | ) ) ) ) ) ) ) ) | |
| And | ) ) ) | |
| Doris V. Pablo-Bustos, M.D.<br>1160 Varnum Street, N.E.<br>Suite 213<br>Washington, D.C.  20017, | ) ) ) ) ) ) | |
| And | ) ) ) | |
| Elwin Bustos, M.D.<br>106 Irving Street NW<br>Washington, D.C.  20010-2927, | ) ) ) ) ) | |
| Defendants | ) ) ) | |

**COMPLAINT**

COME NOW the Plaintiffs, Mary Bigelow and Huston Bigelow, by Michael M. Wilson and John C. Lowe, their counsel, and represent to this Honorable Court as follows:

(Jurisdiction and Parties)

1. Plaintiffs Huston Bigelow and Mary Bigelow are husband and wife and are residents and domiciliaries of the State of North Carolina. They reside together at 969 County Home Road, Blanch, NC 27212.

2. Defendants Washington Hospital Center, Inc. and Medstar Health are at all relevant times corporations that owned and operated a hospital in the District of Columbia known as the Washington Hospital Center. Those Defendants shall hereinafter be collectively referred to as the Washington Hospital Center. The principal place of business of Defendant Washington Hospital Center, Inc. is in the District of Columbia. The principal place of business of Defendant Medstar Health is in the State of Maryland.

3. Defendant Doris V. Pablo-Bustos, M.D., is a physician who practices in the District of Columbia. Upon information and belief, Dr. Pablo-Bustos is a resident and domiciliary of a State other than the State of North Carolina.

4. Defendant Elwin Bustos, M.D., is a physician who practices in the District of Columbia. Upon information and belief, Dr. Elwin Bustos is a resident and domiciliary of a State other than the State of North Carolina.

5. All acts and/or omissions relating to Plaintiffs' claims against each Defendant took place within the District of Columbia.

6.   Pursuant to 28 U.S.C. Section 1391(a)(2) the proper venue for this action is Washington, District of Columbia, as a substantial part of the events or omissions giving rise to the claims against each defendant occurred in the District of Columbia.

7.  The matter in controversy exceeds the sum of $75,000.  Plaintiff Mary Bigelow suffered cardiac arrest and renal failure due to the negligence of Defendants Washington Hospital Center LLC and Medstar Health. Plaintiff Mary Bigelow suffered renal failure and other injury due to the negligence of Defendant Doris V. Pablo-Bustos, M.D. and Elwin Bustos, M.D.  Plaintiff Huston Bigelow  has incurred medical bills and suffered from the loss of the society, companionship, services, and affection of his wife Mary Bustos for approximately two years.  8.  As the matter in controversy exceeds the sum of $75,000, and each of the Plaintiffs are diverse from each of the Defendants as set forth in 28 U.S.C. Section 1332, this Honorable Court has diversity jurisdiction with respect to this action.

### COUNT I
(Medical Negligence Involving All Defendants)

9.   Plaintiff Mary Bigelow presented to the emergency room at the Washington Hospital Center on September 3rd, 2008.

10.   Plaintiff Mary Bigelow was subsequently admitted to the Washington Hospital Center on or about September 3rd, 2008, and assigned to the care of Defendant Doris V. Pablo-Bustos, M.D.

11.   Defendant Doris V. Pablo-Bustos, M.D. consulted and was assisted by her physician husband, Defendant Elwin Bustos, M.D., who also provided medical

treatment to Plaintiff Mary Bigelow at the Washington Hospital Center.

12.    Plaintiff Mary Bigelow presented with a complex medical history, including being on two diuretics and taking potassium.

13.    Defendants Doris V. Pablo-Bustos, M.D., Elwin Bustos, M.D., and physicians employed by the Defendants Washington Hospital Center, LLC and Medstar Health failed to order an electrolyte panel until after Plaintiff Mary Bigelow suffered a cardiac arrest on September 6th, 2008 while still hospitalized at the Washington Hospital Center.

14.    The Washington Hospital Center chart does not contain an official CPR Code sheet as required by JCAHO and the JCAHO's national standard of care.

15.    During the arrest, Plaintiff Mary Bigelow received two shocks from the defibrillator, pressor drugs, and Amiodarone and was resuscitated.

16.    Blood work performed at the time of the cardiac arrest revealed that Plaintiff Mary Bigelow had severely low potassium and magnesium levels.  During the arrest, it was observed that she had VF/Torsades abnormal cardiac rhythms.

17.    More likely than not the cause of Plaintiff Mary Bigelow's cardiac arrest was hypokalemia and hypomagnesemia.

18.    The Critical Care Unit physician taking care of Plaintiff Mary Bigelow recorded that the cardiac arrest was due to ventricular fibrillation due to hypokalemia and hypomagnesemia in the setting of CHF (Congestive Heart Failure).

19.    After the cardiac arrest, Plaintiff Mary Bigelow was admitted to the

CCU.  She required numerous boluses of potassium and magnesium.

20.  After the cardiac arrest, Plaintiff Mary Bigelow's heart never returned to its pre-cardiac arrest level of functioning because the cardiac muscle had been permanently injured.  Plaintiff Mary Bigelow suffered from chest pain after suffering from the cardiac arrest of September 6th, 2008.

21.  After the arrest, Plaintiff Mary Bigelow had an AICD implanted without having a cardiac catheterization performed to look for treatable lesions such as blockages of the coronary arteries.  Where possible, these blockages should be diagnosed and treated, and such diagnosis and treatment was required by the applicable standard of care.  Additionally, Plaintiff Mary Bigelow should have been offered the opportunity to have had cardiac catheterization to diagnose lesions, and a reasonable patient in her position would have chosen to have had cardiac catheterization.  In fact, Plaintiff Mary Bigelow would have chosen to have had a cardiac catheterization if the risks and benefits had been appropriately explained to her, including the benefit of diagnosing and correcting blocked arteries.

22.  Plaintiff Mary Bigelow underwent a bone marrow biopsy while still a patient at the Washington Hospital Center.  In that procedure, a needle was inserted into her pelvic bone and bone marrow was withdrawn for testing.

23.  One of the major risks of having a bone marrow biopsy is that of excessive bleeding.  Because of the risk of excessive bleeding from the procedure, the standard of care requires that drugs which promote bleedings, commonly referred to as "blood thinners", be stopped in advance of the procedure.

In addition, the standard of care required that Plaintiff Mary Bigelow be warned about the risk of bleeding, and explained about the risks of continuing the drugs referred to as "blood thinners," and allow the opportunity to have those drugs stopped in advance of the procedure.    These blood thinners included aspirin, Enosparin (Aggrenox), Lovenox, and Naprosyn.  Plaintiff Mary Bigelow suffered at the time from multiple myeloma and the importance of stopping the blood thinners is even greater in the presence of suspected multiple myeloma, since multiple myeloma itself can cause excessive bleeding.

24.   Plaintiff Mary Bigelow was not informed that her blood thinners should be stopped in advance of the bone marrow biopsy and offered the opportunity to stop the blood thinners in advance of the bone marrow biopsy.

25.   A reasonable patient in the position of Plaintiff Mary Bigelow, if properly advised, would have elected to have stopped the blood thinners in advance of the bone marrow biopsy.   Plaintiff Mary Bigelow, had she been properly advised, would in fact have elected to have stopped the blood thinners in advance of the bone marrow biopsy.

26.   Immediately after the bone marrow biopsy, Plaintiff Mary Bigelow suffered severe bleeding.

27.   Despite the having severe bleeding that started on the day of the bone marrow biopsy, on or about September 15th, 2008, with associated low blood pressure, decreased urine output, blood soaked dressings, and dizziness, the Defendants continued to prescribe the blood thinners Aggrenox and Lovenox.

There is a risk of drug interactions between Aggrenox and Lovenox that can potentiate and make bleeding episodes worse.

28.   The prescription of Aggrenox and Lovenox to Plaintiff Mary Bigelow during the time that she was suffering from excessive bleeding after the bone marrow biopsy was below applicable standards of care.  Additionally, applicable standards of care required that Plaintiff Mary Bigelow be warned of the dangers of continuing to receive Aggrenox and Lovenox, individually, and in combination, after having a bone marrow biopsy associated with excessive bleeding.   A reasonable patient in the position of Plaintiff Mary Bigelow would have elected to have stopped the Aggrenox and Lovenox, individually, and in combination, particularly considering that she was suffering from dramatic blood loss. Additionally, in fact Plaintiff Mary Bigelow would in fact have elected to have stopped the Aggrenox and Lovenox if she had been appropriately warned of the dangers of continuing to receive those drugs, individually and in combination, while she was suffering from severe bleeding after bone marrow biopsy.

29.   Because of the severe bleeding that occurred after her bone marrow biopsy, Plaintiff Mary Bigelow suffered a decrease in her hematocrit and hemoglobin, tests of the ability of her blood to carry oxygen and function effectively.  Associated with the drop in her hematocrit and hemoglobin was a decrease in the functioning of her kidneys.  This decreased in red blood cells should have been treated with adequate blood transfusions but was not.  Instead administration of fluids other than blood transfusions were used that were

inadequate to protect her kidneys.  The Defendants failed to provide Plaintiff Mary Bigelow with appropriate informed consent regarding the failure to adequately provide her with blood transfusions to correct the severe blood loss and protect her kidneys.

30.   Finally, on or about September 19th, 2008, Plaintiff Mary Bigelow developed acute renal failure, which was permanent.

31.  Plaintiff Mary Bigelow's acute and permanent renal failure was due to a combination of decreased renal perfusion, together with the presence of multiple myeloma that made her kidneys specially susceptible to decreases in perfusion. The drop of renal perfusion was due to a combination of the decreased ability of her heart to pump due to the cardiac arrest, together with decreased blood volume due to severe bleeding and inadequate blood transfusions.  The deviations from applicable standards of care of the Defendants, individually and in combination, were substantial factors in Plaintiff Mary Bigelow's permanent acute renal failure. Alternatively, if the Defendants had followed the applicable standard of care, and the cardiac arrest and severe uncorrected bleeding had not occurred, Plaintiff Mary Bigelow, more likely than not, would not have suffered permanent renal failure.

32.  The consulting nephrologist (kidney specialist) wrote that Plaintiff Mary Bigelow's renal failure was due to a combination of decreased renal perfusion together with the presence of multiple myeloma.

33.  Plaintiff Mary Bigelow has continued to suffer from a damaged heart

and permanent renal failure up until the present time.

34.   Defendants Washington Hospital Center, LLC, and Medstar Health, Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D., individually, and acting by and through their agents, servants, employees, and apparent agents, breached applicable standards of care in, inter alia,

(a) Failing to diagnose and treat Plaintiff Mary Bustos's low potassium and magnesium prior to her cardiac arrest;

(b)  Failing to prevent her cardiac arrest;

(c) Failing to warn her of the risks of failing to diagnose and treat her condition of low potassium and magnesium;

(d) Failing to record and/or preserve the record of her Code for Cardiac Arrest as is required;

(e) Failing to perform appropriate tests, including cardiac catheterization, to diagnose and treat blockages of the coronary arteries after she suffered poor cardiac function after the cardiac arrest;

(f) Failing to inform Plaintiff Mary Bustos of the need to perform appropriate tests, including cardiac catheterization, to diagnose and treat blockages of the coronary arteries after she suffered poor cardiac function after the cardiac arrest;

(g) Failing to stop the blood thinners, including aspirin, Enosparin (Aggrenox), Lovenox, and Naprosyn in advance of the bone marrow biopsy;

(h) Failing to warn Plaintiff Mary Bigelow of the need to stop the blood thinners, including aspirin, Enosparin (Aggrenox), Lovenox, and Naprosyn in advance of the bone marrow biopsy;

(i) Failing to stop the blood thinners, including Enosparin (Aggrenox) and Lovenox, after the Plaintiff Mary Bigelow developed severe bleeding after the bone marrow biopsy and suffered from dizziness, hypotension, low hematocrit and hemoglobin, and impaired renal function;

(j) Failing to warn Plaintiff Mary Bigelow of the need to stop the blood thinners, including Enosparin (Aggrenox) and Lovenox, after she developed severe bleeding after the bone marrow biopsy and suffered from dizziness, hypotension, low hematocrit and hemoglobin, and impaired renal function;

(k) Failing to adequately treat the inability of the blood to function adequately because of decreased blood cells through transfusions blood cells rather than the provision of water;

(l) Failing to warn Plaintiff Mary Bigelow concerning the failure to adequately treat the inability of the blood to function adequately because of decreased blood cells through transfusions blood cells rather than the provision of water;

(m)   Failing to address decreased perfusion of the kidneys prior to progression to acute permanent renal failure; and

(n) Defendants may have been negligent in other ways.

35.   Defendants Washington Hospital Center, LLC, and Medstar Health,

Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D., individually, and acting by and through their agents, servants, employees, and apparent agents,

failed to obtain a proper informed consent with respect to the alternatives to the treatment offered, including but not limited to, the options as set forth in Paragraph 34, *supra*.

If properly informed of her options, Plaintiff Mary Bigelow would have chosen to have the recommended alternatives, and would not have suffered a cardiac arrest and subsequent acute permanent renal failure.

The failure to obtain appropriate informed consent may have been breached in other ways.

36.  As a direct and proximate result of the aforesaid negligence and failure to obtain informed consent, Plaintiff Mary Bigelow has suffered and will continue to suffer permanent heart muscle damage, permanent kidney failure, chest pain, failure to perfuse her organs, permanent need for regular dialysis, weakness, inability to function, and the need for extensive medical treatment at the Duke Medical Center and elsewhere.  It is expected that these medical damages will result in her imminent death.

Plaintiff Mary Bigelow and Plaintiff Huston Bigelow have incurred substantial past medical bills; will incur substantial future medical bills, and may incur other economic losses.

Plaintiff Huston Bigelow has suffered a loss of the society, companionship, and consortium of his wife, in that she has suffered from multiple and severe permanent medical injuries up until the present.

WHEREFORE, Plaintiffs Mary Bigelow and Huston Bigelow, her husband, by and through their counsel, Michael M. Wilson, and John C. Lowe, demand judgment that Defendants Washington Hospital Center, LLC, Medstar Health, Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D., are liable to them jointly and severally for compensatory damages in the amount of Fifty Million Dollars ($50 million), plus interest and costs.

### COUNT II
(Punitive Damages Involving Defendants Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D.)

37.  Counts 1 through 36 are hereby realleged as though fully set forth herein.

38.  Defendants Doris V. Pablo-Bustos, M.D. and Elwin Bustos, M.D., failed to do one or more of the following:

(a) Failing to diagnose and treat Plaintiff Mary Bustos's low potassium and magnesium prior to her cardiac arrest;

(b)  Failing to prevent her cardiac arrest;

(c) Failing to warn her of the risks of failing to diagnose and treat her condition of low potassium and magnesium;

(d) Failing to record and/or preserve the record of her Code for Cardiac Arrest as is required;

(e) Failing to perform appropriate tests, including cardiac catheterization, to diagnose and treat blockages of the coronary arteries after she suffered poor cardiac function after the cardiac arrest;

(f) Failing to inform Plaintiff Mary Bustos of the need to perform appropriate tests, including cardiac catheterization, to diagnose and treat blockages of the coronary arteries after she suffered poor cardiac function after the cardiac arrest;

(g) Failing to stop the blood thinners, including aspirin, Enosparin (aggrenox), Lovenox, and Naprosyn in advance of the bone marrow biopsy;

(h) Failing to warn Plaintiff Mary Bigelow of the need to stop the blood thinners, including aspirin, Enosparin (aggrenox), Lovenox, and Naprosyn in advance of the bone marrow biopsy;

(i) Failing to stop the blood thinners, including Enosparin (aggrenox) and Lovenox, after the Plaintiff Mary Bigelow developed severe bleeding after the bone marrow biopsy and suffered from dizziness, hypotension, low hematocrit and hemoglobin, and impaired renal function;

(j) Failing to warn Plaintiff Mary Bigelow of the need to stop the blood thinners, including Enosparin (aggrenox) and Lovenox, after she developed severe bleeding after the bone marrow biopsy and suffered from dizziness, hypotension, low hematocrit and hemoglobin, and impaired renal function;

(k) Failing to adequately treat the inability of the blood to function adequately because of decreased blood cells through transfusions blood cells rather than the provision of water;

Page 14 of 17

(l) Failing to warn Plaintiff Mary Bigelow concerning the failure to adequately treat the inability of the blood to function adequately because of decreased blood cells through transfusions blood cells rather than the provision of water;

(m)   Failing to address decreased perfusion of the kidneys prior to progression to acute permanent renal failure;

and

(n) Defendants may have been negligent in other ways.

Those failures were all grossly negligent, wanton, willful, and committed with reckless indifference to the health and welfare of Plaintiff Mary Bigelow.

WHEREFORE, Plaintiffs Mary Bigelow and Huston Bigelow, her husband, by and through their counsel, Michael M. Wilson, and John C. Lowe, demand judgment that Defendants Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D., are each liable to them individually for punitive damages in the amount of  Million Dollars, plus interest and costs.

Respectfully submitted,

/s/ Michael M. Wilson
Michael M. Wilson.
D.C. Bar No. 941674
1120 19th Street, N.W., LL-11
Washington, D.C.  20036
(202) 223-4488
Fax:  (202) 280-1414
wilson@wilsonlaw.com

/s/ John C. Lowe
John C. Lowe
D.C. Bar No. 427019
John Lowe, PC.
5920 Searl Terrace
Bethesda MD 20816
301-320-3300
johnlowe@johnlowepc.com

*Counsel for the Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Huston Bigelow and Mary Bigelow**<br>**969 County Home Road**<br>**Blanch, NC 27212,**<br><br>    **Plaintiffs,**<br><br>         **v.**<br><br>**Washington Hospital Center, Inc.**<br>**d/b/a the Washington Hospital Center**<br>**110 Irving Street, N.W.**<br>**Washington D.C.  20010,**<br><br>    **And**<br><br>**Medstar Health**<br>**d/b/a the Washington Hospital**<br>**Center**<br>**5565 Sterrett Place**<br>**Columbia, Maryland**<br>**21044,**<br><br>    **And**<br><br>**Doris V. Pablo-Bustos, M.D.**<br>**1160 Varnum Street, N.E.**<br>**Suite 213**<br>**Washington, D.C.  20017,**<br><br>    **And**<br><br>**Elwin Bustos, M.D.**<br>**106 Irving Street NW**<br>**Washington, D.C.  20010-2927,**<br><br>    **Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _____

JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Michael M. Wilson