UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

Huston Bigelow, Individually, and )
as P.R. of the Estate of Mary Bigelow,)
Deceased )
969 County Home Road )
Blanch, NC 27212, )
  )
    Plaintiffs, )
  )
        v. )
  )
Washington Hospital Center )
Corporation )
d/b/a the Washington Hospital Center )
110 Irving Street, N.W. )
Washington D.C.  20010, )
  )
    And )
  )
Doris V. Pablo-Bustos, M.D. )
1160 Varnum Street, N.E. )
Suite 213 )
Washington, D.C.  20017, )
  )
    And )
  )
Elwin Bustos, M.D. )
106 Irving Street NW )
Washington, D.C.  20010-2927, )
  )
    Defendants )
  )
  )

---

**PROPOSED AMENDED COMPLAINT**
(Medical Malpractice, Survival and Wrongful Death)

COMES NOW the Plaintiff Huston Bigelow, Individually and as P.R. of the Estate of Mary Bigelow, by and through Michael M. Wilson and John C. Lowe, his counsel, and represents to this Honorable Court as follows:

(Jurisdiction and Parties)

1. On February 4th, 2011, Plaintiff Huston Bigelow was appointed as Personal Representative of the Estate of Mary Bigelow, Administration Number 10 E 17, by the General Court of Justice of the North Carolina Superior Court.

2. The Estate of Mary Bigelow was established pursuant to the laws of the State of North Carolina, and, thus the estate should be regarded as a resident and domiciliary of the State of North Carolina.

3. Defendant Washington Hospital Center Corporation was at all relevant times a corporation that owned and operated a hospital in the District of Columbia known as the Washington Hospital Center. The principal place of business of Defendant Washington Hospital Center Corporation is in the District of Columbia.

4. Defendant Doris V. Pablo-Bustos, M.D. is a physician who practices in the District of Columbia. Upon information and belief, Dr. Pablo-Bustos is a resident and domiciliary of a State other than the State of North Carolina.

5. Defendant Elwin Bustos, M.D. is a physician who practices in the District of Columbia. Upon information and belief, Dr. Elwin Bustos is a resident and domiciliary of a State other than the State of North Carolina.

Case 1:10-cv-01471-RLW   Document 33   Filed 05/10/11   Page 3 of 15

Page 3 of 15

6. All acts and/or omissions relating to Plaintiff's claims against each Defendant took place within the District of Columbia.

7. Pursuant to 28 U.S.C. Section 1391(a)(2) the proper venue for this action is Washington, District of Columbia, as a substantial part of the events or omissions giving rise to the claims against each defendant occurred in the District of Columbia.

8. The matter in controversy exceeds the sum of $75,000. Plaintiff's deceased wife Mary Bigelow suffered cardiac arrest and renal failure due to the negligence of Defendant Washington Hospital Center Corporation. Mary Bigelow suffered renal failure and death due to the negligence of Defendant Doris V. Pablo-Bustos, M.D. and Elwin Bustos, M.D. Plaintiff Huston Bigelow has incurred medical bills and suffered from the loss of the society, companionship, services, and affection of his wife Mary Bigelow. These injuries are well in excess of the sum of $75,000.

9. As the matter in controversy exceeds the sum of $75,000, and each of the Plaintiffs is diverse from each of the Defendants as set forth in 28 U.S.C. Section 1332, this Honorable Court has diversity jurisdiction with respect to this action.

### COUNT I
Survivorship Claim and Individual Claims on Behalf of Huston Bigelow
(Medical Negligence Involving All Defendants)

10. Mary Bigelow presented to the emergency room at the Washington Hospital Center on September 3rd, 2008.

11. Mary Bigelow was subsequently admitted to the Washington Hospital Center on or about September 3rd, 2008, and assigned to the care of Defendant Doris V. Pablo-Bustos, M.D.

12. Defendant Doris V. Pablo-Bustos, M.D. consulted and was assisted by her physician husband, Defendant Elwin Bustos, M.D., who also provided medical treatment to Mary Bigelow at the Washington Hospital Center.

13. Mary Bigelow presented with a complex medical history, including being on two diuretics and taking potassium.

14. Defendants Doris V. Pablo-Bustos, M.D., Elwin Bustos, M.D., and physicians employed by Defendant Washington Hospital Center Corporation failed to order an electrolyte panel until after Mary Bigelow suffered a cardiac arrest on September 6th, 2008 while still hospitalized at the Washington Hospital Center.

15. The Washington Hospital Center chart does not contain an official CPR Code sheet as required by JCAHO and that national standard of care.

16. During the arrest, Mary Bigelow received two shocks from the defibrillator, pressor drugs, and Amiodarone and was resuscitated.

17. Blood work performed at the time of the cardiac arrest revealed that Mary Bigelow had severely low potassium and magnesium levels. During the arrest, it was observed that she had VF/Torsades abnormal cardiac rhythms.

18. The most likely cause of Mary Bigelow's cardiac arrest was hypokalemia and hypomagnesemia.

19. The Critical Care Unit physician taking care of Mary Bigelow recorded

that the cardiac arrest was due to ventricular fibrillation due to hypokalemia and hypomagnesemia in the setting of CHF (Congestive Heart Failure).

20. After the cardiac arrest, Mary Bigelow was admitted to the CCU. She required numerous boluses of potassium and magnesium.

21. After the cardiac arrest, Mary Bigelow's heart never returned to its pre-cardiac arrest level of functioning because the cardiac muscle had been permanently injured. Mary Bigelow suffered from chest pain after suffering from the cardiac arrest of September 6th, 2008.

22. After the arrest, Mary Bigelow had an AICD implanted without having a cardiac catheterization performed to look for treatable lesions such as blockages of the coronary arteries. Where possible, these blockages should be diagnosed and treated, and such diagnosis and treatment was required by the applicable standard of care. Additionally, Mary Bigelow should have been offered the opportunity to have had cardiac catheterization to diagnose lesions, and a reasonable patient in her position would have chosen to have had cardiac catheterization. In fact, Mary Bigelow would have chosen to have had a cardiac catheterization if the risks and benefits had been appropriately explained to her, including the benefit of diagnosing and correcting blocked arteries.

23. Mary Bigelow underwent a bone marrow biopsy while still a patient at the Washington Hospital Center. In that procedure, a needle was inserted into her pelvic bone and bone marrow was withdrawn for testing.

24. One of the major risks of having a bone marrow biopsy is that of

excessive bleeding. Because of the risk of excessive bleeding from the procedure, the standard of care requires that drugs which promote bleedings, commonly referred to as "blood thinners", be stopped in advance of the procedure. In addition, the standard of care required that Mary Bigelow be warned about the risk of bleeding, and explained about the risks of continuing the drugs referred to as "blood thinners," and allow the opportunity to have those drugs stopped in advance of the procedure. These blood thinners included aspirin, Enosparin (Aggrenox), Lovenox, and Naprosyn. The importance of stopping the blood thinners is even greater in the presence of suspected multiple myeloma, since multiple myeloma itself can cause excessive bleeding.

25. Mary Bigelow was not informed that her blood thinners should be stopped in advance of the bone marrow biopsy and offered the opportunity to stop the blood thinners in advance of the bone marrow biopsy.

26. A reasonable patient in the position of Mary Bigelow, if properly advised, would have elected to have stopped the blood thinners in advance of the bone marrow biopsy. Mary Bigelow, had she been properly advised, would in fact have elected to have stopped the blood thinners in advance of the bone marrow biopsy.

27. Immediately after the bone marrow biopsy, Mary Bigelow suffered severe bleeding.

28. Despite the having severe bleeding that started on the day of the bone marrow biopsy, on or about September 15th, 2008, with associated low blood

pressure, decreased urine output, blood soaked dressings, and dizziness, the Defendants continued to prescribe the blood thinners Aggrenox and Lovenox. There is a risk of drug interactions between Aggrenox and Lovenox that can potentiate and make worse bleeding episodes.

29. The prescription of Aggrenox and Lovenox to Mary Bigelow during the time that she was suffering from excessive bleeding after the bone marrow biopsy was below applicable standards of care. Additionally, applicable standards of care required that Mary Bigelow be warned of the dangers of continuing to receive Aggrenox and Lovenox, individually, and in combination, after having a bone marrow biopsy associated with excessive bleeding. A reasonable patient in the position of Mary Bigelow would have elected to have stopped the Aggrenox and Lovenox, individually, and in combination, particularly considering that she was suffering from dramatic blood loss. Additionally, Mary Bigelow would in fact have elected to have stopped the Aggrenox and Lovenox if she had been appropriately warned of the dangers of continuing to receive those drugs, individually and in combination, while she was suffering from severe bleeding after bone marrow biopsy.

30. Because of the severe bleeding that occurred after her bone marrow biopsy, Mary Bigelow suffered a decrease in her Hematocrit and Hemoglobin, tests of the ability of her blood to carry oxygen and function effectively. Associated with the drop in her Hematocrit and Hemoglobin was a decrease in the functioning of her kidneys. This decrease in red blood cells should have been treated with

adequate blood transfusions but was not. Instead administration of fluids other than blood transfusions were used that were inadequate to protect her kidneys. The Defendants failed to provide Mary Bigelow with appropriate informed consent regarding the failure to adequately provide her with blood transfusions to correct the severe blood loss and protect her kidneys.

31. Finally, on or about September 19th, 2008, Mary Bigelow developed acute renal failure, which was permanent.

32. Mary Bigelow's acute and permanent renal failure was due to a combination of decreased renal perfusion, together with the presence of multiple myeloma that made her kidneys particularly susceptible to decreases in perfusion. The drop of renal perfusion was due to a combination of the decreased ability of her heart to pump due to the cardiac arrest, together with decreased blood volume due to severe bleeding and inadequate blood transfusions. The deviations from applicable standards of care of the Defendants, individually and in combination, were substantial factors in Mary Bigelow's permanent acute renal failure. Alternatively, if the Defendants had followed the applicable standard of care, and the cardiac arrest and severe uncorrected bleeding had not occurred, Mary Bigelow, more likely than not, would not have suffered permanent renal failure.

33. The consulting nephrologist (kidney specialist) wrote that Mary Bigelow's renal failure was due to a combination of decreased renal perfusion, together with the presence of multiple myeloma.

34. Mary Bigelow continued to suffer from a damaged heart and permanent

renal failure up until the time of her death on September 9th, 2010.

35. Defendants Washington Hospital Center Corporation, Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D., individually, and acting by and through their agents, servants, employees, and apparent agents, breached applicable standards of care in, inter alia,

(a) Failing to diagnose and treat Mary Bigelow's low potassium and magnesium prior to her cardiac arrest;

(b) Failing to prevent her cardiac arrest;

(c) Failing to warn her of the risks of failing to diagnose and treat her condition of low potassium and magnesium;

(d) Failing to record and/or preserve the record of her Code for Cardiac Arrest as is required;

(e) Failing to perform appropriate tests, including cardiac catheterization, to diagnose and treat blockages of the coronary arteries after she suffered poor cardiac function after the cardiac arrest;

(f) Failing to inform Mary Bigelow of the need to perform appropriate tests, including cardiac catheterization, to diagnose and treat blockages of the coronary arteries after she suffered poor cardiac function after the cardiac arrest;

(g) Failing to stop the blood thinners, including aspirin, Enosparin (Aggrenox), Lovenox, and Naprosyn in advance of the bone marrow biopsy;

(h) Failing to warn Mary Bigelow of the need to stop the blood thinners, including aspirin, Enosparin (Aggrenox), Lovenox, and Naprosyn in advance of the bone marrow biopsy;

(i) Failing to stop the blood thinners, including Enosparin (Aggrenox) and Lovenox, after the Mary Bigelow developed severe bleeding after the bone marrow biopsy and suffered from dizziness, hypotension, low hematocrit and hemoglobin, and impaired renal function;

(j) Failing to warn Mary Bigelow of the need to stop the blood thinners, including Enosparin (Aggrenox) and Lovenox, after she developed severe bleeding after the bone marrow biopsy and suffered from dizziness, hypotension, low hematocrit and hemoglobin, and impaired renal function;

(k) Failing to adequately treat the inability of the blood to function adequately because of decreased blood cells through transfusions blood cells rather than the provision of water;

(l) Failing to warn Mary Bigelow concerning the failure to adequately treat the inability of the blood to function adequately because of decreased blood cells through transfusions blood cells rather than the provision of water;

(m) Failing to address decreased perfusion of the kidneys prior to progression to acute permanent renal failure; and

(n) Defendants may have been negligent in other ways.

36. Defendants Washington Hospital Center Corporation, Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D., individually, and acting by and through their

agents, servants, employees, and apparent agents, failed to obtain a proper informed consent with respect to the alternatives to the treatment offered, including but not limited to, the options as set forth in Paragraphs 24-26, supra.

37. If properly informed of her options, Mary Bigelow would have chosen to have the recommended alternatives, and would not have suffered a cardiac arrest and subsequent acute permanent renal failure.

38. The failure to obtain appropriate informed consent may have been breached in other ways.

39. As a direct and proximate result of the aforesaid negligence and failure to obtain informed consent, Mary Bigelow, Deceased suffered permanent heart muscle damage, permanent kidney failure, chest pain, failure to perfuse her organs, permanent need for regular dialysis, weakness, inability to function, and conscious pain and suffering. Plaintiff Mary Bigelow, deceased, also incurred substantial medical bills for treatment of her injuries prior to her death.

40. Plaintiff Huston Bigelow has suffered a loss of the society, companionship, and consortium of his wife, in that she has suffered from multiple and severe permanent medical injuries up until her death. Plaintiff Huston Bigelow also incurred substantial medical bills for the treatment of his wife, Mary Bigelow, deceased.

WHEREFORE, Plaintiff Huston Bigelow, individually, and as the P.R. of the Estate of Mary Bigelow, deceased, and the Estate of Mary Bigelow, deceased, by and through his counsel, Michael M. Wilson, and John C. Lowe, demands

judgment that Defendants Washington Hospital Center Corporation, Doris V. Pablo-Bustos, M.D., and Elwin Bustos, M.D., are liable to him jointly and severally for compensatory damages in the Survivorship Claims in the amount of 50 Million Dollars, plus interest and costs.

## COUNT II
(Wrongful Death Involving All Defendants)

41. Paragraphs 1 to 40 are hereby realleged as if fully set forth herein.

42. As a result of the breaches of the national standard of care and lack of informed consent set forth previously, Mary Bigelow suffered a wrongful death on September 9, 2010.

43. Plaintiff Huston Bigelow was at all times relevant to this action. He is the husband of Plaintiff's Decedent Mary Bigelow and was named P.R. of the Estate of Mary Bigelow on February 4th, 2011 pursuant to Administration Number 10 E 17 by the General Court of Justice of the North Carolina Superior Court.

44. The aforesaid negligence and lack of informed consent of the Defendants have proximately caused damages to the Estate of Mary Bigelow, Deceased and the beneficiaries of the Estate of Mary Bigelow, Deceased, as are recognized by the laws of the District of Columbia pertaining to wrongful death.

45. Huston Bigelow, as husband of Mary Bigelow, Deceased, has suffered damages recognized by the D.C. law pertaining to the wrongful death Mary Bigelow, Deceased, individually as husband of Mary Bigelow, Deceased, and as a beneficiary of her Estate.

WHEREFORE, Plaintiff Huston Bigelow, Individually and as Personal Representative of the Estate of Mary Bigelow, Deceased, demands judgment against all named Defendants jointly and severally, for compensatory damages in the full amount of Forty Million Dollars ($40,000,000), plus interest and costs for the wrongful death of Mary Bigelow, Deceased.

Respectfully submitted,

*/s/ Michael M. Wilson*

Michael M. Wilson.
D.C. Bar No. 941674
1120 19th Street, N.W., LL-11
Washington, D.C. 20036
(202) 223-4488
Fax: (202) 280-1414
wilson@wilsonlaw.com

*/s/ John C. Lowe*

John C. Lowe
D.C. Bar No. 427019
John Lowe, PC.
5920 Searl Terrace
Bethesda MD 20816
301-320-3300
johnlowe@johnlowepc.com

*Counsel for the Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Huston Bigelow, Individually, and as P.R. of the Estate of Mary Bigelow, Deceased<br>969 County Home Road<br>Blanch, NC 27212,<br><br>    Plaintiffs,<br><br>            v.<br><br>Washington Hospital Center Corporation<br>d/b/a the Washington Hospital Center<br>110 Irving Street, N.W.<br>Washington D.C. 20010,<br><br>    And<br><br>Doris V. Pablo-Bustos, M.D.<br>1160 Varnum Street, N.E.<br>Suite 213<br>Washington, D.C. 20017,<br><br>    And<br><br>Elwin Bustos, M.D.<br>106 Irving Street NW<br>Washington, D.C. 20010-2927,<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

```
```

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of March, 2011, a copy of the foregoing was served electronically on:

Stuart Neil Herschfeld
snh@braultgraham.com

Mary Kathleen Fallon
mkfallon@braultgraham.com

G. Branch Taylor
branch.taylor.hutlaw@verizon.net

James Heffler
jim.heffler.hutlaw@verizon.net

Diane Uhl
dianeuhl@yahoo.com

Respectfully submitted,

Michael M. Wilson, M.D., J.D.
D.C. Bar No. 941674
1120 19th Street, N.W. Suite LL-11
Washington, D.C. 20036
(202) 223-4488
Fax1: (202) 463-0590
Fax2: (202) 595-0238
Email: wilson@wilsonlaw.com