UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Houston Bigelow, Individually, and<br>as P.R. of the Estate of Mary Bigelow,<br>Deceased, | * * * * | |
| Plaintiffs, | * * | Case No.: 1001471-RLW<br>Judge Robert L. Wilkins |
| v. | * * | |
| Elwin Bustos, M.D. | * * | |
| Defendant. | * | |

**DEFENDANT ELWIN BUSTOS, M.D.'S MOTION *IN LIMINE* TO LIMIT ADMISSIBILITY OF EVIDENCE OF MEDICAL EXPENSE DAMAGES TO AMOUNTS PAID BY PLAINTIFF AND MEDICARE/MEDICAID**

**COMES NOW** the Defendant, Elwin Bustos, M.D., by and through his counsel, Edward A. Gonsalves, Esquire, Nicholas G. Hallenbeck, Esquire, and the law firm of ARMSTRONG, DONOHUE, CEPPOS, VAUGHAN, & RHOADES, CHARTERED, and pursuant to Federal Rule of Evidence 403 and Local Rule LCvR 7, hereby files this Motion *in Limine* to limit the admissibility of evidence of medical expense damages to amounts paid by Plaintiff and Medicare/Medicaid. As grounds in support of this Motion, the Defendant Elwin Bustos, M.D. respectfully states, as follows:

1. This case involves allegations of medical negligence and wrongful death against Mary Bigelow's healthcare provider Elwin Bustos, M.D.

2. For the reasons stated in the attached Memorandum of Points and Authorities in support of this motion, the Defendant Elwin Bustos, M.D. seeks a judicial order limiting the evidence of medical expense damages at trial to no more than the amounts paid directly by the Plaintiff and by Medicare/Medicaid on behalf of the decedent, Mary Bigelow.

3. Pursuant to Local Rule 7(m), defense counsel has conferred with Plaintiff's counsel regarding this motion. This motion is opposed.

**WHEREFORE**, the Defendant, Elwin Bustos, M.D., respectfully requests that this Court enter an Order granting his Motion and limiting the admissibility of evidence of medical expense damages to the amounts paid by the Plaintiff and by Medicare/Medicaid, and respectfully request such additional relief as this Court may deem appropriate.

Respectfully submitted,

**ARMSTRONG, DONOHUE, CEPPOS VAUGHAN & RHOADES, CHTD.**

*/s/ Edward A. Gonsalves*
Edward A. Gonsalves, Esquire (#425160)
eag@adclawfirm.com
Nicholas G. Hallenbeck, Esquire (#992060)
ngh@adclawfirm.com
204 Monroe Street, Suite 101
Rockville, MD 20850
301-251-0440
*Counsel for Defendant Elwin Bustos, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of September, 2013, a copy of the foregoing Defendant Elwin Bustos, M.D.'s Motion to limit the admissibility of evidence of medical expense damages to amounts paid by the Plaintiff and by Medicare/Medicaid, was served via first-class mail, postage prepaid, to:

John C. Lowe, Esquire
John Lowe, P.C.
5920 Searl Terrace
Bethesda, MD 20816
*Attorney for Plaintiffs*

*/s/ Edward A. Gonsalves*
Edward A. Gonsalves

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Houston Bigelow, Individually, and | * | |
| as P.R. of the Estate of Mary Bigelow, | * | |
| Deceased, | * | |
| | * | |
| Plaintiffs, | * | Case No.: 1001471-RLW |
| | * | Judge Robert L. Wilkins |
| v. | * | |
| | * | |
| Elwin Bustos, M.D. | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELWIN BUSTOS, M.D.'S MOTION *IN LIMINE* TO LIMIT ADMISSIBILITY OF EVIDENCE OF MEDICAL EXPENSE DAMAGES TO AMOUNTS PAID BY THE PLAINTIFF AND BY MEDICARE/MEDICAID ON BEHALF OF DECEDENT MARY BIGELOW**

**COMES NOW** the Defendant, Elwin Bustos, M.D., by and through his counsel, Edward A. Gonsalves, Esquire, Nicholas G. Hallenbeck, Esquire, and the law firm of ARMSTRONG, DONOHUE, CEPPOS, VAUGHAN, & RHOADES, CHARTERED, and pursuant to Federal Rule of Evidence 403, and Local Rule LCvR 7, hereby files this Memorandum of Points and Authorities in Support of Defendant Elwin Bustos, M.D.'s Motion to limit the admissibility of evidence of medical expense damages to amounts paid by the Plaintiff and by Medicare/Medicaid. As grounds in support thereof, the Defendant Elwin Bustos, M.D. respectfully states, as follows:

**I.     Factual and Legal Background**

Plaintiff alleges that Defendant Dr. Elwin Bustos breached the standard of care when he ordered an electrolyte panel for the decedent, Ms. Mary Bigelow on September 5, 2008, but failed to order the study "stat." Plaintiff alleges that if Dr. Bustos had done so, the study would have been done that day, and Ms. Bigelow would not have suffered personal injuries, *inter alia*,

cardiac arrest on September 6, 2008, subsequent kidney failure, and death more than two years later on September 9, 2010. *See Amended Complaint.* Defendant Dr. Bustos denies all allegations of negligence, causation and damages. *See Amended Answer.*

At trial beginning on October 17, 2013, the Plaintiff intends to ask the jury for $1,988,456.44 as compensation for Ms. Bigelow's medical expenses. *See* Exhibit A – Plaintiff's "Medical expense spreadsheet." For the reasons stated below, the Plaintiff should be precluded from seeking compensation for medical bills in excess of the amount actually paid by the Plaintiff (currently unknown) and by Medicare/Medicaid: $223,350.30. *See* Exhibit B – November 9, 2012 "Payment Summary Form" from Centers for Medicare and Medicaid Services, at page 3 ("The Medicare program paid $223,350.30 for medical care related to your liability recovery.").

## II. Federal Rule of Evidence 403, the Purpose of Motion in Limine and the Standard of Review

"[M]otions in limine are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10-11 (D.D.C. 2011) (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). Fed. R. Evid. 403 authorizes the Court to preclude relevant evidence when its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

When filing a motion in limine, "'parties should target their arguments to demonstrating why certain items or categories of evidence should (or should not) be introduced at trial, and direct the trial judge to specific evidence in the record that would favor or disfavor the introduction of those particular items or categories of evidence.' In short, motions in limine are

a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (internal citations omitted).

"[T]rial judges are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008).

The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion in limine presents an evidentiary issue that is appropriate for ruling in advance of trial. *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (citing *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); accord *Rosemann v. Roto-Die, Inc.*, 377 F.3d 897, 902 (8th Cir. 2004); *United States v. Layton*, 720 F.2d 548, 553 (9th Cir. 1983), cert. denied, 465 U.S. 1069, 104 S. Ct. 1423, 79 L. Ed. 2d 748 (1984), and overruled on other grounds by *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008)).

### III. Argument

#### A. The Plaintiff should be precluded from presenting a claim for hypothetical damages that will unfairly prejudice the Defendant, confuse the issue and mislead the jury.

##### 1. The Nature of Tort Damages

Damages in a negligence cause of action are designed to compensate the Plaintiff and make the Plaintiff "whole," not to provide windfalls. *See, e.g.,* RESTATEMENT OF TORTS, § 920, comment *e* (1939) ("[in] general the law seeks to award compensation, and no more, for personal injuries negligently inflicted.).

**2. The Plaintiff's alleged medical expenses damages of $1.988,456.44 is unreasonable, unfair, would prejudice the Defendant, confuse the issues, mislead the jury, and result in a windfall to the Plaintiff.**

**a. Damages must be fair and reasonable to be compensable.**

The Plaintiff intends to offer into evidence at trial medical bills totaling $1,988,456.44. *See* Exhibit A. Ms. Bigelow, however, was a Medicare/Medicaid beneficiary. *See* Exhibit B. Accordingly, Ms. Bigelow's health care providers agreed to "reimbursement" of $223,350.30. *See* Exhibit B, *and Grossmont Hospital Corp. v. Sebelius*, 903 F. Supp. 2d 39, 43 (2012) ("[P]articipating hospitals are generally reimbursed under the Medicare statute for their 'reasonable costs' of services provided to Medicare beneficiaries.").

The Plaintiff does not allege that Ms. Bigelow or her Estate paid $1,988,456.44 in medical expenses. The Plaintiffs apparently do not allege that Ms. Bigelow, or her estate ever had, or ever will have any legal obligation to pay $1,988,456.44. Accordingly, the fair, reasonable and appropriate measure of medical expense damages in this case is the amount of medical expenses actually paid.

**b. Any probative value from the production of the inflated medical bills at trial is outweighed by the risk of unfair prejudice, confusion of the issues and misleading the jury.**

In addition to being unfair, unreasonable, and inappropriate, a claim for hypothetical medical expenses of $1,988,456.44 would be prejudicial, would confuse the damages issue and would mislead the jury into believing that Ms. Bigelow's economic losses were much greater than they actually were. The jury would be misled into believing that "making the plaintiff whole" again would require an economic damages verdict of nearly $2,000,000, while the Plaintiff has not suffered an actual economic loss, or incurred any real economic obligation in

the that amount. *See, e.g., Grossmont* at 24-25 (noting that a provider must bill the State, but when an individual is Medicaid eligible, "a presumption of uncollectibility applies" and "the provider's obligation to send a bill to the beneficiary is excused.").

          **c. A claim for $1,988,456.44 would constitute a claim for an avoidable windfall.**

Since the Plaintiff has not suffered a $1,988,456.44 loss, nor incurred any such real obligation as a result of the alleged negligence, any such claim to the jury would represent a claim for a known, and avoidable windfall. Windfalls, or recoveries in excess of actual losses, are discouraged under the law. *See Reid v. District of Columbia*, 391 A.2d 776 (D.C. App. 1978) ("A cardinal principle of law is that, in the absence of punitive damages, Plaintiff can recover no more than the actual loss suffered…") (internal citation omitted); *see also, Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) ("The 'broad command of Erie,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction) (internal citations omitted); *and Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).

Another Federal Court that addressed a similar issue found that "[i]t would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical services from a tortfeasor and pocket the windfall." *Gordon v. Forsythm County Hospital Authority, Inc.*, 409 F. Supp. 708, 719 (M.D.N.C. 1976).

    **B.**    <u>The Collateral Source Rule does not apply</u>

        **1. History, Purpose and Rationale of the Collateral Source Rule**

The collateral source rule is "an exception to the general rule that damages in tort should be compensatory only." *Overton v. United States of America*, 619 F.2d 1299, 1306

(1980). In the District of Columbia, "[u]nder the collateral source rule, payments to the injured party from a collateral source are not allowed to diminish damages recoverable from the wrongdoer." *Hardi v. Mezzanotte*, 818 A.2d 974, 984 (D.C. 2003).

"The rationale for the [collateral source] rule is that it is more just that the windfall should inure to the benefit of the injured party than that it should accrue to the tortfeasor." *See* Exhibit C – Memorandum Opinion in *Brunson v. Capitol Medical Center, LLC*, Superior Court of the District of Columbia, Case No.: 2009 – CA 005930M at page 7 (citing *District of Columbia v. Jackson*, 451 A.2d 867, 870 (D.C. 1982)).

Here, "[t]he collateral source rule does not apply to amounts above the discounted medical bills paid by Medicare/Medicaid," because "[t]he collateral source doctrine [only] applies where a third party is involved and a plaintiff may be entitled to 'benefit and judgment' from the tortfeasor and/or the collateral source." *See* Exhibit D – Memorandum Opinion in *Acker v. Specialty Hospital of Washington Hadley, LLC* at 2-4, (citing *District of Columbia v. Jackson*, 451 A.2d 867, 871 (D.C. 1982); *and Hardi v. Mezzanotte*, 818 A.2d 974, 984 (D.C. 2003).

Here, the Defendant is not seeking to diminish the Plaintiff's recovery by any amount. The Defendant is merely seeking to align the Plaintiff's requested economic recovery with an economic damages number that is fair, reasonable and appropriate. Accordingly, the collateral source rule does not apply.

### 2. "Writeoffs" or "Adjustments" are not payments

The reduction in payments to Ms. Bigelow's health care providers from $1,988,456.44 to $223,350.30 was not the result of "payments" from another source, but the result of a statutorily-mandated pre-existing agreement to write down, adjust, write off, discount, or

delete, in order to pay or "reimburse" at negotiated rates. *See, e.g.*, *Grossmont* at 43 ("Participating hospitals are generally reimbursed under the Medicare statute for their 'reasonable cots' of services provided to Medicare beneficiaries… [u]nder the statute, 'reasonable cost' is defines as 'the cost actually incurred…'").

The difference between the medical expenses charged and the medical expenses paid by Medicare, and the patient, therefore, are "illusory" – that amount of money was not paid by a collateral source, was never intended to be paid, and never will be paid by anyone. *See e.g., Moorehead v. Crozer Chester Medical Ctr.*, 765 A.2d 786, 789 (Pa. 2001) ("pursuant to agreements with Medicare and Blue Cross, Appellee was contractually obligated to accept $12,167.40 as full payment for services rendered…where, as here, the exact amount of expenses has been established by contract and those expenses have been satisfied, there is no longer any issue as to the amount of expenses for which the plaintiff will be liable.") (citing Restatement (Second) of Torts, § 911 comment h (1977) and 25 Corpus Juris Secundum, Damages § 91(3) (1996 & Supp. 1999)).

### 3. The "Profit" problem: $223,350.30 is a potential windfall; $1,988,456.44 is a profit.

"The collateral source rule does not require that tortfeasors pay the highest charge that could be considered reasonable, and it does not permit a patient covered by Medicaid to 'recover damages for medical services [in excess of the amount paid by Medicaid] and pocket the windfall.'" Exhibit C – Memorandum Opinion in *Brunson v. Capitol Medical Center, LLC*, Superior Court of the District of Columbia, at 6-7 (internal citation and quotation omitted).

Accordingly, if the Court limits the Plaintiff's medical expenses damages to $223,350.30, then "no windfall would accrue to the tortfeasor because the defendants would

bear the full cost of their wrongful conduct, including 100% of Ms. [Bigelow's] actual medical expenses." *Id*. at 7.

Recovery of anything more than her own payments and payments by Medicare/Medicaid on behalf of Ms. Bigelow would result in her Estate's beneficiaries "profiting from [the plaintiff's] death," despite the fact that D.C. law clearly holds that "an injured person 'has no right to make a profit from the injury.'" *Id.* at 7 (citing *Reid v. District of Columbia*, 391 A.2d 776, 777 (D.C. 1978).

Even with a recovery of $223,350.30, the Plaintiff, not the Defendant will receive a windfall. Medicare paid that amount, not Ms. Bigelow or her Estate. In addition, any amount that Medicare declines to pursue through a lien will fall to the estate as a "windfall" recovery for a non-existent loss. While the Plaintiff is likely to incur a windfall if the jury awards $223,350.30 in economic damages, the pursuit of $1,988,456.44 can only be characterized as profiteering.

To illustrate the plaintiff profit problem, we can look to any particular bill in this matter. For example, on June 15, 2009, Mrs. Bigelow had an office visit with her gastroenterologist in Danville, Virginia, Dr. Mukesh B. Patel. *See* Exhibit E – June 15, 2009 bill from Danville Gastroenterology. Assuming *arguendo* that the Plaintiff proves negligence, and that this gastroenterologist visit was causally related to the alleged negligence in this matter, then the jury must then determine appropriate economic compensation.

Dr. Patel "charged" $240.00 for this visit on June 15, 2009. Dr. Patel accepted "payment" (aka "reimbursement") of $96.12 from Medicare for his services that day, per his agreement with Medicare. Ms. Bigelow was responsible for $24.03. Medicare issued an "adjustment" for $119.85. The Plaintiff has not offered any evidence to prove that the decedent

or the Estate paid the difference of $119.85, or that the Plaintiff has any obligation to do so more than four years later.

It is illogical to order Dr. Bustos to pay an additional $119.85 in "compensation" for an alleged economic "damage" that is merely illusory. There is no real economic *damage* associated with the $119.85 – it is a number on paper, only. Moreover, it would be punitive, and contrary to the logic underlying our tort system to require Dr. Bustos to pay $119.85 as "compensation" for a non-existent economic damage. Finally, a financial award for an illusory expense creates a perverse economic incentive – it rewards successful personal injury litigants with financial profit, on top of a potential windfall (to the extent Medicare/Medicaid does not pursue its lien, the Plaintiff will receive a windfall).

**IV.     Conclusion**

If the Plaintiff can prove to a jury that Dr. Elwin Bustos was negligent, and that his negligence proximately caused the alleged injuries and death of Ms. Bigelow, than the Plaintiff is certainly entitled to seek fair and reasonable compensation from the jury for all causally related medical expenses. Here, the appropriate measure of fair and reasonable compensation is the amount paid Medicare, Medicaid, or directly by Ms. Bigelow or her Estate. The medical bills that the Plaintiff intends to introduce at trial do not reflect fair and reasonable compensation. The bills are illusory, and dramatically overstate the economic loss in this matter.

Accordingly, the Defendant requests that only Ms. Bigelow's medical bills that reflect the actual amount paid by Medicare or Medicaid be submitted to the jury as evidence of Medical Expense economic damages in this matter.

Respectfully submitted,

**ARMSTRONG, DONOHUE, CEPPOS
VAUGHAN & RHOADES, CHTD.**


*/s/ Edward A. Gonsalves*
Edward A. Gonsalves, Esquire (#425160)
eag@adclawfirm.com
Nicholas G. Hallenbeck, Esquire (#992060)
ngh@adclawfirm.com
204 Monroe Street, Suite 101
Rockville, MD  20850
301-251-0440
*Counsel for Defendant Elwin Bustos, M.D.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of September, 2013, a copy of foregoing Memorandum of Points and Authorities in Support of the Defendant Elwin Bustos, M.D.'s Motion to limit the admissibility of evidence of medical expense damages to amounts paid by Medicare/Medicaid, was served via first-class mail, postage prepaid, to:

John C. Lowe, Esquire
John Lowe, P.C.
5920 Searl Terrace
Bethesda, MD 20816
*Attorneys for Plaintiffs*


*/s/ Edward A. Gonsalves*
Edward A. Gonsalves